# EXHIBIT 2

Case 8:25-cv-00251-JDE    Document 1-3    Filed 02/07/25    Page 2 of 18    Page ID #:14
Electronically Filed by Superior Court of California, County of Orange, 08/14/2024 01:31:27 PM.
30-2024-01419363-CU-FR-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By K. Climer, Deputy Clerk.

| | |
|---|---|
| 1 | Brook T. Barnes (#276667) |
| | bbarnes@swlaw.com |
| 2 | Gregory J. Sonnenberg (#331216) |
| | gsonnenberg@swlaw.com |
| 3 | Andrew P. Young (#326540) |
| | apyoung@swlaw.com |
| 4 | SNELL & WILMER L.L.P. |
| | 600 Anton Blvd., Suite 1400 |
| 5 | Costa Mesa, California 92626-7689 |
| | Telephone:   714.427.7000 |
| 6 | Facsimile:    714.427.7799 |
| 7 | Attorneys for Plaintiff Crecero Technologies, Inc. |

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE

| | |
|---|---|
| CRECERO TECHNOLOGIES, INC. (formerly known as Newt Corporation), a Canadian Corporation.<br><br>Plaintiff,<br><br>v.<br><br>STEVEN HOFFMANN, an individual, DAVID THOMPSON, an individual, VALERIA RAIGORODSKAIA and DOES 1-20,<br><br>Defendants. | Case No. 30-2024-01419363-CU-FR-CJC<br><br>**COMPLAINT FOR:**<br><br>**(1) Breach of Fiduciary Duty;**<br>**(2) Fraudulent Concealment;**<br>**(3) Conversion; and**<br>**(4) Unjust Enrichment**<br><br>**Assigned for All Purposes**<br><br>Judge Theodore Howard |

4859-6851-5274

COMPLAINT

# INTRODUCTION

1. Plaintiff Crecero Technologies, Inc. ("Plaintiff" or the "Company") develops cloud-based payment platforms for secure online payments. Defendants Steven Hoffmann, David Thompson, and Valeria Raigorodskaia (collectively, "Defendants") are former officers and minority shareholders of the Company. Defendants methodically bled the Company of its financial resources under the cover of their positions as high-ranking officers and shareholders, enriching themselves irrespective of the corporate mission and to the detriment of the Company and its other shareholders. Undeterred by their fiduciary obligations to the Company, Defendants engaged in scheme to embezzle at least $3,000,000 of the Company's assets by engaging in a series of transactions with entities related to Defendants and organized in Mexico. Defendants engaged in a series of money transfers to these related entities for little or no consideration and then lied about the purpose behind the transfers. The ruse transactions were intended to hide what – after multiple painstaking investigations in both Mexico and Canada have made clear – these entities were created and owned by Defendants for the sole purpose of stealing the Company's assets.

2. The Company alleges the following based upon the personal knowledge of its officers and directors unless otherwise stated. Allegations pleaded on information and belief are based upon, among other things, investigations conducted by authorities in Mexico and Canada, a review and analysis of publicly available information concerning the Company, and affidavits from investors. The Company believes that substantial additional evidentiary support will exist for the allegations set forth below after a reasonable opportunity for discovery.

# NATURE OF THE ACTION

3. At all times relevant to this Complaint, Defendants—Hoffmann, Thompson and Raigorodskaia—were officers or agents of the Company. Defendants acted outside of their authority and diverted the Company resources and monies to their own pockets. This Complaint is for damages in favor of the Company and against its former officers and agents for the designed plan to embezzle money out of the Company into entities formed in Mexico

and owned by Defendants. Through their wrongful acts, Defendants stole more than $3,000,000 from the Company. The Complaint seeks to remedy Defendants' violations of law and breaches of fiduciary duty during the period beginning in 2020 through the present (the "Relevant Period").

4. Defendants breached their fiduciary duties of good faith and fairness to the Company by taking advantage of their control over the Company to engage in self-dealing that benefitted only them, and at the expense of the Company and its other shareholders. In their roles as executive officers, agents, shareholders, and directors, Defendants used their power to benefit only themselves thus disregarding any duties they owed to others. As individuals with operational control over the Company and fiduciary duties to the Company, these actions were contrary to their obligations to act in the best interest of the Company.

5. To wit, Defendants have routinely misappropriated corporate assets from the Company, including but not limited to, transferring monies and assets to companies separately owned by one or more of Defendants, for the sole benefit of Defendants.

6. In knowingly facilitating the conversion of the Company's assets and usurping its corporate opportunities for their own personal gain, Defendants violated applicable law by directly breaching and/or aiding the other Defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith, and fair dealing.

7. Defendants' wrongful actions have caused the Company to suffer substantial injury. Defendants were aware of their obligations under the law requiring them to, among other things, observe their fiduciary duties owed to the Company. Defendants were at all times charged with acting in the best interests of the Company and its shareholders, yet they breached their fiduciary duties by knowingly facilitating the conversion of the Company's assets and usurping its corporate opportunities for their own personal gain and causing harm to the Company as detailed herein. Defendants remain in breach of their fiduciary duties and absent court intervention the Company will continue to be harmed.

8. Defendants intentionally failed to implement adequate internal controls at the Company as part of their scheme to defraud the Company and its shareholders.

9. This suit seeks to recover the substantial damages caused to the Company by Defendants' myriad violations of state law and breaches of fiduciary duties.

## JURISDICTION AND VENUE

10. Jurisdiction properly lies with this Court because the amount in controversy is within the jurisdictional limits of the Superior Court of the State of California for an unlimited civil case. The amount in controversy exceeds $25,000, and the relief sought is not of a type that may be granted in a limited civil case. Jurisdiction over all defendants, including the named Defendants and Does 1-20, is proper because the defendants conduct business in California including, but not limited to, the misconduct alleged in this Complaint, and because they have sufficient minimum contacts with California to render the exercise of jurisdiction by the California courts permissible under the traditional notions of fair play and substantial justice.

11. Venue is proper in this Court because the defendants herein purposefully direct their activities to the State of California, and consummated transactions in the State of California, and as result, Defendants caused an event or events to occur in California, and more particularly in the County of Orange, out of which this action arises and which forms the basis of this action.

## PARTIES

12. Plaintiff, or the "Company" in this case, is a Canadian corporation doing business in Orange County.

13. The Company is informed, believes, and alleges thereon that Defendant Steven Hoffmann ("Hoffmann") is an individual who maintains a residence in this County and conducted the Company's business in this County, including making material misrepresentations to directors and shareholders about the Company. At all relevant times, he was Chairman of the Company's board of directors (the "Board"), a minority shareholder, and served as the Company's Chief Executive Officer ("CEO") throughout the Relevant Period. Hoffmann is responsible for conversion of the Company's assets and usurping of its corporate opportunities for the personal gain of Defendants throughout the Relevant Period,

1  and the lack of an adequate system of internal controls at the Company. In addition, Hoffmann was married to Defendant Valeria Raigorodskaia throughout the Relevant Period and Raigorodskaia at all times had control of Hoffmann's bank accounts, and actually participated in the transfer of monies. Hoffmann also employed Defendant David Thompson as the Company's Chief Financial Officer ("CFO"). Hoffmann conspired with Raigorodskaia and Thompson, aided and abetted Raigorodskaia and Thompson, or at the very least had or should have had knowledge of Raigorodskaia and Thompson ongoing and continuous self-dealing and breaches of fiduciary duty as described in particularity in the Complaint.

14. The Company is informed, believes, and alleges thereon that Defendant David Thompson ("Thompson") is an individual who is subject to the jurisdiction of this County. At all relevant times he was a member of the Company's Board, its minority shareholder, and served as the Company's CFO. Thompson is responsible for conversion of the Company's assets, usurping of its corporate opportunities for the personal gain of Defendants, and the lack of an adequate system of internal controls at the Company. Thompson conspired with Raigorodskaia and Hoffmann, aided and abetted Raigorodskaia and Hoffmann, or at the very least had or should have had knowledge of Raigorodskaia and Hoffmann ongoing and continuous self-dealing and breaches of fiduciary duty as described in particularity in the Complaint.

15. The Company is informed, believes, and alleges thereon that Defendant Valeria Raigorodskaia ("Raigorodskaia") is an individual who is subject to the jurisdiction of this County. She is a married to Hoffmann, performed consulting services as an agent for the Company, is a minority shareholder, and conspired with Thompson and Hoffmann, aided and abetted Thompson and Hoffmann, or at the very least had or should have had knowledge of Thompson and Hoffmann ongoing and continuous self-dealing and breaches of fiduciary duty as described in particularity in the Complaint.  Defendant Raigorodskaia executed payments from the Company accounts to the Mexican Companies for services she knew were fraudulent.

16. The Company does not know the true names and capacities of the defendants sued herein as DOES 1-20, inclusive, and will amend this Complaint to allege such facts as soon as they are ascertained. The Company is informed and believe that the defendants, and each of them designated herein as DOES 1-20, inclusive, are in some manner responsible for the events and happenings alleged herein. Defendants and DOES 1-20 are sometimes individually referred to herein as "Defendant" and collectively as "Defendants."

### FIDUCIARY DUTIES OF DEFENDANTS

17. Defendants owed the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care because they served as officers, agents, and directors of the Company, and had the ability to exercise control (and, in fact, did exercise control) over the business and corporate affairs of the Company. These duties required Defendants to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner, and to act in the best interests of the Company and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

18. Defendants as officers, agents, shareholders, and directors of the Company, exercised control over the Company and engaged in transactions material to the facts underlying the Company's claim. Defendants owed the Company fiduciary obligations of good faith and inherent fairness. These duties required Defendants to use their utmost ability to ensure that they did not use their power to control corporate activities to benefit themselves alone, in a manner detrimental to the other shareholders, and in a manner conflicting with the proper conduct of the Company's business.

19. Each director and officer of the Company owed and owes the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

20. In addition, each director of the Company is required to perform the duties of a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner such director believes to be in the best interests

of the Company and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.

21. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the affairs of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a) neither violate nor knowingly permit any officer, director, or employee of the Company to violate applicable laws, rules, and regulations;

(b) ensure that proper internal controls existed at the Company, including internal controls for avoiding conversion of corporate assets, controls to avoid the usurpation of corporate opportunities;

(c) neither engage in self-dealing nor knowingly permit any officer, director, or employee of the Company to engage in self-dealing;

(d) manage, direct, and supervise the employees, businesses, and affairs of the Company in accordance with the rules and regulations set by government agencies, in accordance with the Company's certificate of incorporation and by-laws;

(e) remain informed of how the Company conducted its operations, and, upon receipt of notice or information of imprudent, unsound, or unlawful conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures necessary to comply with applicable laws;

(f) conduct the Company's affairs in an efficient, businesslike matter so as to make it possible to provide the highest quality of performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

(g) exercise reasonable control and supervision over the officers and employees of the Company.

22. The conduct of Defendants who were also officers and/or directors of the Company has been ratified by all Defendants.

23. At times relevant hereto, Defendants were the agents of each of the other defendants and were at all times acting within the course and scope of such agency.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

24. In committing the wrongful acts alleged in this Complaint, Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

25. Throughout the Relevant Period, Defendants collectively and individually initiated a course of conduct, including:

(a) Allowing directors and officers of the Company to engage in self-dealing, conversion of corporate assets, and usurping of corporate opportunities;

(b) Fraudulently concealing the facts that directors and officers of the Company were actively and routinely engaging in self-dealing, conversion of corporate assets, and usurping of corporate opportunities;

(c) Intentionally failing to implement and/or maintain a system of adequate controls at the Company to ensure against the occurrence of the aforementioned acts of corporate malfeasance by officers, directors, or employees of the Company; and as a result of the foregoing, the Company has been harmed and will continue to be harmed absent court intervention.

26. Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct. During this time, Defendants breached their fiduciary duties to the Company.

27. The purpose and effect of Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to personally profit from the conversion of the Company's assets by surreptitiously misappropriating the Company's assets and monies, disguise and/or conceal the Company's actual value, financial results, corporate

opportunities, and future business prospects.

28. Defendants accomplished their conspiracy, common enterprise, or common course of conduct by engaging in self-dealing and/or knowingly permitting officers and directors of the Company to engage in self-dealing, by: (a) purposefully and fraudulently concealing the facts that directors and officers of the Company were actively and routinely engaging in self-dealing, conversion of corporate assets, and usurping of corporate opportunities, and (b) intentionally failing to implement and/or maintain a system of adequate controls at the Company to ensure against the occurrence of the aforementioned acts of corporate malfeasance by officers and directors of the Company.

29. Defendants, and each of them, aided and abetted and rendered substantial assistance in the wrongs complained of in this Complaint. In taking such actions to substantially assist the commissions of the wrongdoing complained of in this Complaint, each of the Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## SUBSTANTIVE ALLEGATIONS

30. The Company was incorporated in Ontario, Canada on or about April 23, 2023, formerly known as NEWT Corporation. The Company develops cloud-based payment platforms for secure online payments. The Company markets its services throughout the United States, Canada, and Mexico. Throughout the Relevant Period, the Company was privately held and backed by financial investors.

31. Hoffmann conspired with his co-Defendants, Raigorodskaia and Thompson, to create several entities in Mexico to hide money from investors for services that the Company never received. For example, in the spring and summer of 2021, Defendants created a Mexican entity, Apoyo Tu Porvenir S.A.P.I. de C.V ("SOFOM") and promoted this entity as a key asset in the financing conducted through Varshney Capital. On information and belief, the Company believes that Defendants took in excess of $1,000,000 in cash from the Company through these Mexican entities.

32. Additionally, on a date unknown to the Company, Hoffmann formed a company called AFINO. When he accepted a position as CEO of the Company, Hoffman wound up AFINO's operations and unlawfully used the Company funds to pay off AFINO investors. In total, Hoffman withdrew $50,000 from the Company's accounts and used that money to pay investors in AFINO, including himself, his wife – Raigorodskaia – and Thompson. This money, which was in fact a repayment of equity, was disguised as compensation for services rendered and intellectual property owned by AFINO. Hoffman failed to disclose his participation and interest in the AFINO when dealing with the Company.

33. Defendants breached their fiduciary duties by engaging in self-dealing throughout the Relevant Period by converting the Company's assets and usurping the Company's corporate opportunities in furtherance of their personal interests. Specifically, Hoffmann neglected corporate opportunities and neglected his duties, prioritizing personal enrichment over his responsibilities to the Company. Defendants failed to disclose to the Board or investors that he was benefiting personally from these transactions. In one incident, using the Company's corporate funds, Hoffman paid himself $250,000 *twice* for a license he purportedly owned and sold to the Company. Hoffman then let the license lapse rendering it worthless.

34. Defendants' failure to disclose these conflicts were not a mere oversights or lack of due diligence by Hoffmann, but evidence of a repeated practice of non-disclosure, obfuscation and corporate theft. Furthermore, Hoffmann made material misrepresentations to prospective investors and other shareholders regarding the Company registering and offering a public security, despite knowing that Company had not, and could not, provide audited financial statements because of the financial quagmire that Defendants created. There was simply no feasible means for Hoffmann or Thompson to provide audited financial statements given the financial disarray of the Company.

35. Defendants made material misrepresentations about the Company's finances, while siphoning money to the Mexican entities and creating false business expenses.

1  Defendants made misrepresentations that the Company would receive financing through a
2  public offering, but Defendants never attempted to complete audited financial statements.
3  Hoffmann told prospective investors and shareholders that financial statements were "just
4  about finished" but the true purpose of these misrepresentations was to give Defendants
5  additional time to abscond assets and send monies to the Mexican entities. For example, on
6  June 29, 2022, Defendants withdrew $250,000 from a Company account and falsely
7  identified it as a "loan from Canada" when, in fact, Defendants were using this money for
8  personal gain. On June 30, 2022, Defendants transferred an additional $250,000 out of the
9  Company's bank account directly to Defendants' accounts for no consideration.

10  36.  Hoffmann and Thompson continually fed misrepresentations to Company
11  shareholders until all the Company's liquidity had been transferred to the Mexican entities,
12  and ultimately to Defendants' own bank accounts. To hide this fraud, Defendants recorded
13  fictitious expenditures on the books of the Company. The stolen money, having been
14  transferred to Defendants' own bank accounts, was not available to finance projects
15  committed to by the Company, including projects with certain Mexican companies doing
16  business with the Company. Consequently, these wrongful acts led to significant liabilities
17  for the Company and these Mexican companies, particularly Proveedora de Beneficios, S.A.
18  de C.V., NEWT Kiosks, and NEWT Payments, which, without the promised financing, were
19  left without resources to continue with regular operations. Hoffmann continued to promise
20  to send money for the operation of these Mexican companies, but never did. Thus, Hoffmann
21  never intended to honor his fiduciary obligations he owed the Company while serving as its
22  CEO and chairperson, as well as his obligations toward these Mexican companies doing
23  business with the Company.

24  37.  Likewise, Defendants, on various occasions, ordered the disposition of
25  resources of said Mexican companies, particularly from Proveedora de Beneficios, S.A. de
26  C.V., to cover personal expenses and those of his personal companies in Mexico, without
27  repayment, for personal financial gain. These wrongful acts were clear breaches of fiduciary
28  duties and acts of self-interest at the expense of the companies.

38. In reasonable and justifiable reliance on the representations made by Defendants, investors delivered to Defendants in excess of $3 million, all of which the Company believes that Defendants have embezzled.

39. In further breach of their fiduciary duties owed to the Company, Defendants, and each of them, failed to provide the Company with all financial records of the Company when requested.

40. The Company brings this action to redress injuries suffered by the Company as a direct result of the breaches of fiduciary duties by Defendants.

41. Defendants personally participated in the conversion of the Company's assets and usurping of its corporate opportunities for the personal gain of Defendants throughout the Relevant Period. Defendants are responsible for the Company's failure to implement and maintain an adequate system of internal controls designed to prevent the types of malfeasance complained of in this Complaint. Defendants are also responsible for personally participating in the fraudulent concealment of the fact that directors and officers of the Company were actively and routinely engaging in self-dealing, conversion of corporate assets, and usurping of corporate opportunities. In addition, Defendants conspired with each other, aided and abetted, or at the very least had or should have had knowledge of the ongoing and continuous self-dealing and breaches of fiduciary duty as described in particularity in the following paragraph.

42. If the Company's officers and directors are protected against personal liability for their acts of mismanagement, abuse of control, and breaches of fiduciary duties alleged in this Complaint by directors and officers ("D&O") liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds (i.e., monies belonging to the shareholders). Upon information and belief, the D&O insurance policies covering Defendants in this case contain provisions that eliminate coverage for any action brought directly by the Company against Defendants, known as the "insured versus insured exclusion."

///

**FIRST CAUSE OF ACTION**

**Breaches of Fiduciary Duties**

(Against all Defendants and Does 1 to 20)

43. The Company incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth below.

44. Defendants owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of the Company's business and affairs, particularly with respect to issues regarding its financial viability.

45. Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

46. Defendants conduct set forth in this Complaint was characterized by intentional, reckless, or negligent breaches of the fiduciary duties Defendants owed to the Company, as alleged in this complaint. Defendants intentionally, recklessly, or negligently breached or disregarded their fiduciary duties to protect the rights and interests of the Company.

47. Defendants violated applicable law by directly breaching and/or aiding the other Defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith, and fair dealing owed to the Company, in that Defendants allowed directors and officers of the Company to engage in self-dealing, conversion of corporate assets, and usurping of corporate opportunities, fraudulently concealed the facts that directors and officers of the Company were actively and routinely engaging in self-dealing, conversion of corporate assets, and usurping of corporate opportunities, an intentionally failed to implement and/or maintain a system of adequate controls at the Company to ensure against the occurrence of the aforementioned acts of corporate malfeasance by officers, directors, or employees of the Company.

48. Defendants' actions were not a good-faith exercise of prudent business judgment to protect and promote the corporate interests of the Company. In fact, they acted in contravention of the interests of the Company.

49. As a direct and proximate result of Defendants breaches of their fiduciary obligations, the Company has sustained and continues to sustain significant damages. As a result of the misconduct alleged above, Defendants are liable to the Company in an amount to be proven at trial but believed to be no less than $3 million.

## SECOND CAUSE OF ACTION

### Fraudulent Concealment

(Against all Defendants and Does 1 to 20)

50. The Company incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

51. Defendants personally participated in the conversion of the Company's assets and usurping of its corporate opportunities for their personal gain and benefit throughout the Relevant Period.

52. As a direct and proximate result of the aforesaid fraudulent concealment, the Company has been damaged. The Company seeks damages in an amount to be proven at trial but believed to be no less than $3 million.

53. In doing the things herein alleged, Defendants acted with malice, oppression and/or fraud pursuant to California Code of Civil Procedure, section 3294(c), and acted willfully and with the intent to cause injury to the Company. As such Defendants, and each of them, are therefore guilty of malice, oppression and/or fraud and the Company is entitled to recover an award of exemplary and/or punitive damages.

## THIRD CAUSE OF ACTION

### Conversion

(Against all Defendants and Does 1 to 20)

54. The Company incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

55. Defendants are officers, directors, and/or employees of the Company and participate in the operation of the Company's business. Throughout the Relevant Period, Defendants, and each of them, by means of false and deceptive practices, misappropriated

and converted to their own personal use and possession, without the Company's consent, the Company's assets, including money and corporate records, all of which belonged to the Company.

56. The Company made demands upon Defendants to return the Company's assets, including its money and corporate records. Defendants have repeatedly failed and refused to do so.

57. Defendants, as former officers and agents of the Company, are required to return all books and records in their custody or power and all money belonging to the Company.

58. An audit of the books and records and an investigation of the property, funds, and affairs of the Company is necessary. The Company is informed and believes that Defendants have converted the Company's assets and usurped its corporate opportunities for their personal gain, and misappropriated corporate funds for various purposes, diverted them to directly to Defendants and that the misappropriation would not be further disclosed by a return and review of the Company's books and records.

59. As a direct and proximate result of Defendants actions, the Company has been damaged. The Company seeks damages in an amount to be proven at trial but believed to be no less than $3 million.

60. In doing the things herein alleged, Defendants, with malice, oppression and/or fraud pursuant to California Code of Civil Procedure, Section 3294(c), and acted willfully and with the intent to cause injury to the Company. As such, Defendants, and each of them, are therefore guilty of malice, oppression and/or fraud and the Company is entitled to recover an award of exemplary and/or punitive damages.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

(Against all Defendants and Does 1 to 20)

61. The Company incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

62. This claim is brought on behalf of the Company against Defendants for unjust enrichment. Defendants were officers and/or director of the Company during the Relevant Period.

63. As alleged above, Defendants breached their duties of loyalty to the Company by not acting solely in the Company's interests in performing their employment duties. As a result of their disloyal conduct, Defendants were unjustly enriched. Specifically, Defendants were unjustly enriched by the profits and business goodwill they received as a result of their conversion of the Company's assets and the usurpation of the Company's corporate opportunities.

64. The Company was harmed by Defendants wrongful conduct.

65. Because it would be inequitable for Defendants to retain the monies they acquired, they should be forced to disgorge all of their ill-gotten gains and the amounts by which they have been unjustly enriched in an amount to be proven at trial but believed to be no less than $3 million.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

(a) Against all Defendants and in favor of Plaintiff for the amount of damages sustained by Plaintiff as a result of Defendants breaches of fiduciary duties, other compensation in an amount to be determined according to proof at trial, but believed to be no less than $3 million, plus prejudgment interest, and for punitive damages in an amount to be determined at trial;

(b) Against all Defendants and in favor of Plaintiff, for compensatory damages, other compensation in an amount to be determined according to proof at trial, but believed to be no less than $3 million, plus prejudgment interest, and for punitive damages in an amount to be determined at trial;

(c) Awarding to Plaintiff restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation unlawfully obtained by Defendants, and other compensation to be determined according to proof at trial,

1  but believed to be no less than $3 million, plus prejudgment interest, and for punitive
2  damages in an amount to be determined at trial;

3      (d) Awarding to Plaintiff the costs and disbursements of the action,
4  including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses;

5      (e) Ordering the return of all corporate books and records belonging to the
6  Company; and

7      (f) Granting such other and further relief as the Court deems just and
8  proper.

Dated: August 14, 2024                SNELL & WILMER L.L.P.

By: _____
Brook T. Barnes
Gregory J. Sonnenberg
Andrew P. Young
Attorneys for Plaintiff CRECERO Technologies, Inc.

4859-6851-5274

- 17 -
COMPLAINT